Filed 11/15/24  In re M.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.B., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E083809 |
| Plaintiff and Respondent, | (Super.Ct.No. J299512) |
| v. | OPINION |
| M.E., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

In this appeal from the dispositional order of April 30, 2024, defendant and appellant M.E. (mother) contends plaintiff and respondent San Bernardino County Children and Family Services (CFS) and the juvenile court failed to comply with the inquiry requirements set forth in the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and Welfare & Institutions Code[1] section 224.2 as to her son, M.B.[2] CFS contends the issue is not yet ripe. We agree with CFS and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

*A. Referral and Petition.*

On December 25, 2023, CFS received a referral alleging physical abuse and general neglect of M.B. (born 2022). CFS investigated the allegations, detained all of mother's children—P.E. (born 2014), Z.A. (born 2018), and M.B., and filed a petition under section 300, subdivisions (a), (b)(1), (e), and (i), on behalf of M.B. As amended on March 19, 2024, the petition alleged that while under the care and custody of mother, M.B. suffered serious physical abuse; that mother and K.B. (father and noncustodial

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

[2] In addition to appealing the dispositional order as to B.M., mother also filed a notice of appeal as to her older children, P.E. and Z.A.; however, her petition was dismissed when she failed to timely move for relief from default. On May 10, 2024, this court noted that the juvenile court had ordered a selection and implementation hearing for P.E. and Z.A. only, and that order may not be appealed but must initially be the subject of a writ petition. (§ 366.26, subd. (*l*); *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 815-817.) Consequently, we dismissed P.E. and Z.A. and limited this appeal to M.B. only.

parent) failed to protect the child; and that mother participated in domestic violence with her boyfriend in the child's presence.[3]

B. *Detention Report and Hearing.*

According to the detention report filed on December 28, 2023, mother was asked, but denied, having any known or possible Native American Indian heritage. Father submitted the Judicial Council Forms, form ICWA-020, indicating he has no Indian ancestry. He identified L.H. (stepmother) and S.N. (grandmother) as family members. The juvenile court asked him if the information on the form ICWA-020 was correct; he replied, "Yes." The court made ICWA inquiries of the maternal relatives (stepgrandmother L.J. and aunt Ms. W.); they denied any Indian ancestry. M.B. was removed from mother's custody, and father was authorized for overnight/weekend visits and placement.

C. *Jurisdiction/Disposition Reports and Hearing.*

The jurisdiction/disposition report filed January 12, 2024, notes that the social worker spoke with the maternal aunt (B.W.) and father on January 4, and both denied having Indian ancestry. The social worker also spoke with mother who stated, "Biologically, [J.] is not my father." Mother indicated she had found her biological father when she was 19 years old, his name is R.H., "and she believes 'he is supposed to have some[ Indian ancestry],' but states 'he will not do a DNA test.'" Mother ultimately

---

[3] CFS filed a petition under section 300, subdivisions (a), (b)(1), and (j) with respect to mother's older children, P.E. and Z.A.; however, they are not parties to this appeal.

3

denied having any Indian ancestry and was unable to provide additional information. On January 9, the social worker called the maternal great-aunt, S.L., and left a message.

At the hearing on January 18, 2024, county counsel stated, "I . . . need clarification as to who [mother's] biological father is. I have three different names for the maternal grandfather and we need clarification for ICWA purposes." The juvenile court asked mother if she knows whether she has Native American or Indian blood, and she replied, "Not that I know." The court again asked father about his Indian ancestry, and he replied, "I don't know." Turning to family members present in the courtroom, the court inquired of the maternal grandmother, S.B., who denied Indian ancestry. The maternal stepgrandmother, L.J., stated that she was married to the maternal grandfather, J.H. Sr., who had raised mother, but is deceased. The biological maternal grandfather, R.H., had no contact with mother and his whereabouts were unknown. The matter was continued and set for a contested hearing.

According to the first addendum to the jurisdiction/disposition report, filed March 19, 2024, CFS recommended M.B. be removed and placed in out-of-home care, and family reunification services be offered to father who was compliant with his case plan. By April 29, CFS recommended M.B. be placed with father under a plan of family maintenance.

At the contested jurisdiction/disposition hearing on April 30, 2024, the juvenile court sustained the allegations in the amended petition, declared M.B. a dependent of the court, placed him with father, and found that he "may come under the provisions of ICWA." An ICWA notice review was set for June 14, 2024.

4

Mother argues the juvenile court and CFS made improper and inadequate inquiries into M.B.'s Indian ancestry in violation of ICWA, and "this was a prejudicial error because the court found, as [CFS] recommended, that the ICWA may apply." Acknowledging the child was placed with father, mother asserts that M.B. remains "under the court's jurisdiction still and ha[s] a potential of removal into foster care yet again." CFS argues the issue is not yet ripe for consideration because the juvenile court found ICWA may apply, so the inquiry is ongoing and there is no erroneous order to be corrected. We agree with CFS and affirm.

CFS and the juvenile court have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*D.F.*, at p. 566.) When the initial inquiry provides a "reason to believe that an Indian child is involved," (§ 224.2, subd. (e)) the court and social worker must conduct further inquiry to "determine whether there is reason to know a child is an Indian child." (§ 224.2, subd. (e)(2).) CFS "does not discharge [its] duty of further inquiry until [it] make[s] a 'meaningful effort' to locate and interview extended family members and to contact BIA and the tribes.'" (*In re K.T.* (2022) 76 Cal.App.5th 732, 744.)

Here, whether CFS has or has not yet satisfied its duty of inquiry, there is no error for us to correct. The juvenile court found that M.B. "may come under the provisions of

5

ICWA." Given the information available to the court and CFS, this order is not erroneous. Rather, it is the correct finding under the circumstances and leaves the inquiry process ongoing. In general, we do not consider ICWA inquiry issues until the court has terminated parental rights because "[s]o long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry, both [CFS] and the juvenile court have an adequate opportunity to fulfill those statutory duties." (*In re S.H.* (2022) 82 Cal.App.5th 166, 179.) Nor is remand with instructions to complete the ICWA inquiry necessary, regardless of the merits of mother's arguments that CFS has not yet completed its duty of further inquiry. (See *S.H.*, at pp. 176-178.) This dependency matter does not end with this appeal because the juvenile court has found that M.B. may be an Indian child. This finding requires CFS to continue its ICWA inquiries. "So long as proceedings are ongoing and all parties recognize the continuing duty of ICWA inquiry, both [CFS] and the juvenile court have an adequate opportunity to fulfill those statutory duties." (*S.H.*, at p. 179.)

## III.  CONCLUSION

The dispositional order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER      
Acting P. J.

We concur:

MILLER      
      J.

FIELDS      
      J.